1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

SOUTHERN DISTRICT OF CALIFORNIA

9
10

11  PINE VALLEY HOUSE RESORT, LLC,
    a California limited liability corporation,
12  et al.,

13                                    Plaintiff,

14  v.

15  GAVIN NEWSOM, in his capacity as
    Governor of the State of California, et al.,
16

17                                    Defendants.

18

19

Case No.:  21-CV-568 TWR (BLM)

**ORDER (1) GRANTING
DEFENDANTS' MOTIONS TO
DISMISS, (2) DISMISSING
PLAINTIFFS' COMPLAINT, AND
(3) DENYING AS MOOT THE CITY
DEFENDANTS' MOTION FOR A
MORE DEFINITE STATEMENT**

(ECF Nos. 18–20)

         Presently before the Court are the Motions to Dismiss (the "Motions") filed by the

20  State Defendants[1] ("State Mot.," ECF No. 20), the County Defendants[2] ("Cty. Mot.," ECF

21

22

23  [1] The State Defendants consist of Gavin Newsom, in his capacity as Governor of the State of California;
    Rob Bonta, in his capacity as Attorney General of the State of California; Mark Ghaly, in his capacity as
24  Secretary of the California Health and Human Services Agency; and Tomas Aragon, in his capacities as
    Director and State Public Health Officer of the California Department of Public Health.  (*See* ECF No. 1
25  ("Compl.") ¶¶ 32–36.)

26
    [2] The County Defendants comprise Nora Vargas, in her capacity as Vice Chair for the San Diego Board
27  of Supervisors; Joel Anderson, in his capacity as a Member of the San Diego Board of Supervisors; Terra
    Lawsonremer, in her capacity as a Member of the San Diego Board of Supervisors; Nathan Fletcher, in
28  his capacity as a Member of the San Diego Board of Supervisors; Jim Desmond, in his capacity as a

1

No. 18[3]), and the City Defendants[4] ("City Mot.," ECF No. 19[5]),[6] as well as Plaintiffs'[7] Opposition to ("Opp'n," ECF No. 23) and Defendants' Replies in Support of ("State Reply," ECF No. 27; "Cty. Reply," ECF No. 26; "City Reply," ECF No. 28) the Motions. The Court determined that this matter is suitable for determination on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 33.)  Having carefully reviewed Plaintiffs' Complaint, the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motions and **DISMISSES** Plaintiffs' Complaint.  Accordingly, the Court

---

Member of the San Diego Board of Supervisors; and Dr. Wilma Wooten, in her capacity as Public Health Officer for San Diego County, California. (*See* Compl. ¶¶ 37–40.)

[3] Although the Court refers to the pagination provided by the Parties where possible, to avoid confusion, pin citations to ECF No. 18 will refer to the page numbers provided by the Court's CM/ECF system.

[4] The City Defendants are Todd Gloria, in his capacities as Mayor of San Diego and as a Member of the City Council of San Diego, California; Joe Lacava, in his capacity as a Member of the City Council of San Diego, California; Jennifer Campbell, in her capacity as a Member of the City Council of San Diego, California; Stephen Whitburn, in his capacity as a Member of the City Council of San Diego, California; Monica Montgomery Steppe, in her capacity as a Member of the City Council of San Diego, California; Marni Von Wilpert, in her capacity as a Member of the City Council of San Diego, California; Chris Cate, in his capacity as a Member of the City Council of San Diego, California; Raul Campillo, in his capacity as a Member of the City Council of San Diego, California; Vivian Moreno, in her capacity as a Member of the City Council of San Diego, California; and Sean Elo-Rivera, in his capacity as a Member of the City Council of San Diego, California. (*See* Compl. ¶¶ 41–42.)

[5] The City Defendants alternatively move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (*See* City Mot. at 4; *see also* ECF No. 19-1 ("City Mem.") at 8–9.)

[6] The County Defendants join in the State Motion, (*see* Cty. Mot. at 3; ECF No. 26 ("Cty. Reply") at 1), and the City Defendants Joint in State and County Motions. (*See* City Mot. at 4–5.)

[7] Current, non-terminated Plaintiffs include Reopen San Diego Small Business Coalition and the Restaurant Plaintiffs, consisting of Pine Valley House Resort, LLC; Nica Katherine Knite; Descanso Junction Restaurant and Catering, Inc.; Tammy Cooker; BELGON Incorporated; Belynn Gonzales; Christos Kapetanios, individually and doing business as Mr. Ds Cocktail Lounge, Cafe la Maze, and On the Rocks Cocktails; Gonzo & Fern, LLC, doing business as Steele 94 Restaurant & Bar; Miguel Aguirre; Steven Asaro, individually and doing business as Cafe 67 and Antique Row Cafe of El Cajon; Michael Anthony Andrews, individually and doing business as Meat Monsters Grill; La Salle Conglomerate LLC, doing business as El Avocado Plant Based Food; Daniel La Salle; Rudfords Restaurant, LLC, doing business as Rudfords; Jeff Kacha; Acoustic Ales Brewing Experiment, Inc., doing business as Encinitas Ale House and Carlsbad Brewing Company; Tommaso Maggiore; Maria's Jalisco, Inc., doing business as Jalisco's Café; and Maria Osuna. (*See* Compl ¶¶ 18–31; *see also* ECF Nos. 8, 12.)

**DENIES AS MOOT** the City Defendants' alternative request for a more definite statement.

## BACKGROUND

### I.   Plaintiffs' Allegations[8]

Plaintiffs to this action are a collection of restaurants and their owners (the "Restaurant Plaintiffs"), as well as the Reopen San Diego Small Business Coalition (the "Coalition"), which is "a membership association of dining and drinking establishments, gyms, dance studios, martial arts studios, hair salons, and other businesses and individuals in the City of San Diego, and/or in San Diego County, California." (*See* Compl. ¶¶ 13, 18–27, 31.)  By now, the facts alleged in Plaintiffs' Complaint—which challenges orders and restrictions issued and enforced in response to COVID-19 (the "challenged restrictions")—are familiar to the Parties, the Court, and all Californians.  The Court therefore briefly summarizes Plaintiffs' allegations.

"On March 4, 2020, Defendant Newsom proclaimed a State of Emergency in response to the spread of COVID-19 . . . pursuant to Section 8625 of the California Government Code." (*See* Compl. ¶ 4; *see also id.* ¶ 23.)  Pursuant to this proclamation, on March 19, 2020, the State Public Health Officer issued what has colloquially been called the "Stay at Home" Order.  (*See id.* ¶¶ 47, 49.)  The Restaurant "Plaintiff[s] . . . were required to cease providing indoor and outdoor dining for their customers to comply with the March 19, 2020, Order" and "were permitted to offer exclusively take-out and delivery service." (*See id.* ¶ 60.)

---

[8] For purposes of Defendants' Motions, the facts alleged in Plaintiffs' Complaint are accepted as true.  *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

Although they are proper subjects of judicial notice, *see* Fed R. Evid. 201(b), because the Court does not rely on any of the proffered exhibits, the Court **DENIES AS MOOT** the County Defendants' (ECF Nos. 18-1), the City Defendants' (ECF No. 19-2), the State Defendants' (ECF Nos. 20-2, 27-1), and Plaintiffs' (ECF No. 24) Requests for Judicial Notice.

3

"On May 4, 2020, Governor Newsom, again acting pursuant to emergency powers under state law, issued Executive Order N-60-20[,]" which permitted businesses to begin reopening in stages, as determined by the State Public Health Officer." (*See id.* ¶ 63.) Pursuant to this order, on May 7, 2020, the State Public Health Officer "issued an Order permitting the gradual reopening of businesses and activities in California in stages." (*See id.* ¶ 64.) The May 7, 2020 order "provided for four stages of gradual reopening, with the final stage, Stage 4, consisting of an end to all stay-at-home orders and a full reopening of businesses." (*See id.*) The Restaurant Plaintiffs "were permitted to resume providing outdoor dining service" at that time, (*see id.* ¶ 65), although they "were required by defendants to implement numerous additional health and safety practices as a condition to resuming outdoor dining service." (*See id.* ¶ 66.)

"On July 13, 2020, the State Public Health Officer issued a further Order directing all restaurants in the State of California to again cease indoor dining service." (*Id.* ¶ 84.) "The Order applied to all restaurants in San Diego County." (*Id.*)

On August 28, 2020, the then-Acting State Public Health Officer "implemented a statewide Order that abandoned the previous, staged re-opening plan promulgated in the May 7, 2020 Order" and that "dictated that counties would be classified according to a new plan entitled 'Blueprint for a Safer Economy[ the "Blueprint"],' under which a color-coded 'tier' system would be used." (*See id.* ¶ 92.) "Under the August 28, 2020, Order, under the respective tiers, restaurants are required to 1.) cease all indoor dining (Purple tier); 2.) limit indoor dining capacity to 25% (Red tier); or 3.) limit indoor dining capacity to 50% (Orange and Yellow tiers)." (*Id.*)

On December 3, 2020, the State of California issued a Regional Stay at Home Order. (*See id.* ¶ 105.) This again forced the Restaurant Plaintiffs to close their businesses to indoor and outdoor dining, although they were still permitted to offer take-out, pick-up, and delivery. (*See id.* ¶¶ 107, 109, 113.) The Regional Stay at Home Order was lifted on January 25, 2021, allowing restaurants also to offer outdoor dining, (*see id.* ¶ 119), pursuant to a County-imposed curfew. (*See id.* ¶ 120.) In the midst of the Regional Stay at Home

Order, on December 14, 2020, Governor Newsom announced that COVID-19 vaccines were beginning to be administered in California.  (*See id.* ¶ 112.)

The Restaurant Plaintiffs contend that they have been treated differently than other similarly situated restaurants in the County of San Diego because nearly all of them were served Cease-and-Desist Orders or Notices of Violation after publicly voicing their opposition to the challenged restrictions and, sometimes, their intention that their businesses would remain open in violation of those orders.  (*See id.* ¶ 128.)  At the time Plaintiffs filed their Complaint, the Restaurant Plaintiffs were allowed to serve dine-in patrons at 25% of their seating capacity as well as outdoor diners under the Blueprint system.  (*See id.* ¶ 131.)  It is undisputed, however, that the Blueprint was rescinded as of June 15, 2021.  (*See, e.g.*, Opp'n at 6.)

## II.    Procedural History

Plaintiffs filed their Complaint on March 31, 2021, alleging fifteen causes of action for: (1) violation of their substantive due process rights under the Fourteenth Amendment of the United States Constitution; (2) violation of their procedural due process rights under the Fourteenth Amendment of the United States Constitution; (3) violation of the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution; (4) violation of the Takings Clause of the Fifth Amendment of the United States Constitution; (5) violation of the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3; (6) retaliation under the First Amendment of the United States Constitution;[9] (7) violation of the Takings Clause of the Fifth Amendment of the United States Constitution;[10] (8) violation of the Taking of Damaging Clause of the California Constitution, Cal. Const. Art. I, § 19; (9) commandeering private property or personnel under California

---

[9] Plaintiffs agreed to drop their sixth cause of action against the State Defendants.  (*See* State Mot. at 9.)

[10] In meet-and-confer discussions, Plaintiffs represented that they would dismiss their seventh cause of action, (*see* City Mem. at 1; State Mot. at 9), which appears to be duplicative of their fourth cause of action.  (*Compare* Compl. ¶¶ 189–96, *with* Compl. ¶¶ 213–20.)

Government Code § 8572; (10) violation of the Equal Protection Clause of the California Constitution, Cal. Const. Art. I, § 7; (11) violation of their right of liberty under the California Constitution, Cal. Const. Art. I, § 1; (12) violation of the dormant Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3; (13) termination of the declared state of emergency pursuant to California Government Code § 8629; (14) a declaration that the original proclamation of a state of emergency did not meet the statutory requirements under California Government Code § 8558; and (15) a declaration that the Governor's claim to broad emergency powers violations the Non-Delegation Clause of the California Constitution, Cal. Const., Art. IV, § 1.[11]  (*See generally* ECF No. 1.)  Following several stipulated extensions, (*see generally* ECF Nos. 6, 14, 17), Defendants filed the instant Motions on July 23, 2021.  (*See generally* ECF Nos. 18–20.)

## DEFENDANTS' MOTIONS TO DISMISS

### I.   Legal Standards

#### A.   *Federal Rule of Civil Procedure 12(b)(1)*

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  *White*, 227 F.2d at 1242.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749

---

[11] Plaintiffs confirmed through meet-and-confer discussions that their thirteenth, fourteenth, and fifteenth causes of action are brought only against the State Defendants.  (*See* ECF No. 18 at 9–26 ("Cty. Mem.") at 26 n.4; City Mem. at 1.)

F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings."  *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."  *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).  Generally, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."  *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733).

"Because . . . mootness . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)).

### B.   Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

7

theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile."  *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

/ / /

/ / /

## II.   Analysis

Collectively, Defendants seek dismissal of each of Plaintiffs' fifteen causes of action with prejudice.  (*See* Cty. Mot. at 1; Cty. Mem. at 26; City Mot. at 3–4; City Mem. at 9; State Mot. at 2–5; ECF No. 20-1 ("State Mem.") at 1–2.)  The Court, however, is not writing on a clean slate—at this point, these arguments have been litigated extensively in numerous lawsuits in various fora throughout California and across the country.  *See, e.g.*, *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747 (9th Cir. 2021), *cert. denied*, --- S. Ct. ---, 2022 WL 89400 (2022); *Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976 (S.D. Cal. 2021).  The Court therefore addresses the Parties' arguments and each of Plaintiffs' causes of action as thoroughly but concisely as possible consistent with these authorities.

### A.   *Jurisdictional Issues*

#### 1.   *Eleventh Amendment Immunity*

Each set of Defendants argues that they are entitled to immunity under the Eleventh Amendment of the United States Constitution, (*see* Cty. Mem. at 25–26; City Mem. at 2–4; State Mem. at 18), which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Specifically, the State and County Defendants contend that they are immune from Plaintiffs' state law causes of action, (*see* Cty. Mem. at 25–26; State Mem. at 18), while the City Defendants argue that they are also immune from Plaintiffs' federal constitutional claims.  (*See* City Mem. at 2–4.)  Because "Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts[,]" *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1058 (E.D. Cal. 2021) (quoting *Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1048 (9th Cir. 1999), *superseded by statute on other grounds as recognized by In re Sienega*, 18 F.4th 1164, 1169 (9th Cir. 2021)) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)), "Eleventh Amendment immunity issues are to be resolved prior to reaching the merits of a substantive

challenge to a cause of action." *Id.* at 1058 n.3 (citing *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012); *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002); *In re Jackson*, 184 F.3d at 1048).

"Through the Eleventh Amendment, a state is immune from suit brought in federal court by its own citizens or citizens of other states." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019)). "Actions in federal court against agencies or instrumentalities of a state and officials of a state acting in their official capacity are also barred by the Eleventh Amendment." *Id.* (citing *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 967 (9th Cir. 2010); *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986)). "This immunity includes the adjudication of pendent state law claims against state defendants in federal courts." *Id.* (citing *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540–41 (2002); *Pennhurst*, 465 U.S. at 106; *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004)). "[F]or purposes of suits under 42 U.S.C. § 1983, a state, its agencies, and officials acting in their official capacity are not considered to be 'persons' and cannot be sued for monetary damages for a violation of that act." *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Wolfe v. Strankman*, 392 F.3d 358, 364–65 (9th Cir. 2004); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350–51 (9th Cir. 1982)). "However, under the *Ex parte Young* exception, a state official sued in his official capacity for injunctive relief is considered a 'person' under § 1983 because 'official-capacity' actions for prospective relief are not treated as actions against the State." *Id.* (footnote omitted) (citing *Will*, 491 U.S. at 71 n.10; *Wolfe*, 392 F.3d at 365). "The *Ex parte Young* exception does not apply when relief against a state official is sought under state law." *Id.* (citing *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018)).

### a.    The State Defendants

The State Defendants contend that Plaintiffs' state law claims against them are barred by sovereign immunity. (*See* State Mot. at 4 (citing *Pennhurst*, 465 U.S. at

98–102); State Mem. at 18 & n.5.)   Plaintiffs fail to address the State Defendants'
argument, (*see* Opp'n at 24–25; *see also* State Reply at 9), thereby conceding it. *See Moore
v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014).  On the merits, Plaintiffs seek
only injunctive and declaratory relief against the State Defendants, (*see* State Mot. at 7 ¶ 2;
*see also* Compl. Prayer at 74–75), all of whom are state officials acting in their official
capacity.  (*See* Compl. ¶¶ 32–36; *see also Krainski*, 616 F.3d at 968.)  Accordingly, the
State Defendants are immune from Plaintiffs' state law causes of action against them. *See
Doe*, 891 F.3d at 1153.  The Court therefore **GRANTS** the State Defendants' Motion and
**DISMISSES WITH PREJUDICE** Plaintiffs' eighth through eleventh and thirteenth
through fifteenth causes of action against them. *See id.* (concluding that the district court
should have dismissed with prejudice a petition against state instrumentalities as barred by
the Eleventh Amendment).

b.     The County and City Defendants

"State sovereign immunity does not extend to county and municipal governments,
unless state law treats them as arms of the state." *Sato v. Orange Cty. Dep't of Educ.*, 861
F.3d 923, 928 (9th Cir. 2017) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,
1040–41 (9th Cir. 2003)); *see also Culinary Studios*, 517 F. Supp. 3d at 1059–60 (citing
*Ray v. Cty. of L.A.*, 935 F.3d 703, 708 (9th Cir. 2019).  Whether a county or municipality
"can obtain Eleventh Amendment immunity as an arm of the State . . . is determined by
examining five factors (known as the *Mitchell* factors): (1) whether a money judgment
would be satisfied out of state funds; (2) whether the entity performs central governmental
functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power
to take property in its own name or only the name of the state; and (5) the corporate status
of the entity." *See Culinary Studios*, 517 F. Supp. 3d at 1060 (citing *Ray*, 935 F.3d at
709; *Sato*, 861 F.3d at 929); *Mitchell v. L.A. Cty. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th
Cir. 1988)).  "The first factor is the most important[,]" *id.* (citing *Ray*, 935 F.3d at 709–10;
*Sato*, 861 F.3d at 929), and "the second factor has two components: (1) whether a matter
is of statewide and not local concern, and (2) the extent to which the state exercises

11

centralized government control over the performance of the particular function at issue." *See id.* (citing *Ray*, 935 F.3d at 710).

Relying on *Porter v. Gore*, 354 F. Supp. 3d 1162 (S.D. Cal. 2018), the County Defendants challenge Plaintiffs' state constitutional claims against them on the basis that they essentially are "an attack on the *State's* Public Health Orders—the State adopted regulations that apply statewide, and its regulations do not provide counties with the authority to relax the State restrictions."  (*See* Cty. Mem. at 25 (emphasis in original).) Plaintiffs respond that "the Eleventh Amendment does not shield political subdivisions when they are enforcing state law[,]" (*see* Opp'n at 25 (citing *Evers v. Cty. of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984)), and also that "the County had its own public health orders[,]" which "are not state law[.]"  (*See id.*)

Neither the County Defendants nor Plaintiffs addresses the *Mitchell* factors, (*see generally* Cty. Mem; Opp'n; Cty. Reply), or the published decisions from District Courts throughout California denying Eleventh Amendment immunity to county defendants in other suits challenging COVID-related restrictions.  *See generally Culinary Studios*, 517 F. Supp. 3d at 1059–61; *Bols v. Newsom*, 515 F. Supp. 3d 1120, 1133–35 (S.D. Cal.), *reconsideration denied*, No. 20-CV-873-BEN (BLM), 2021 WL 1313545 (S.D. Cal. Apr. 8, 2021).  The Court sees no reason to depart from the reasoning of these cases, which concluded that the *Mitchell* factors weighed against concluding that county defendants were arms of the state, *see Culinary Studios*, 517 F. Supp. 3d at 1060–61, and that *Porter v. Gore* was distinguishable in this context and did not compel a different result.  *See Bols*, 515 F. Supp. 3d at 1134–35.  Accordingly, the Court concludes that the County Defendants are not entitled to immunity under the Eleventh Amendment.

As for the City Defendants, they contend that "[t]here are unique grounds for finding that the City Defendants enjoy Eleventh Amendment immunity" as to all of Plaintiffs' claims against them, (*see* City Mem. at 1), because "the City of San Diego is required by state law, Health and Safety Code section 120175.5(b), to ensure compliance with the State and County public health orders."  (*See id.* at 3; *see also generally id.* at 2–4.)  As with the

County Defendants, Plaintiffs respond that "the Eleventh Amendment does not shield political subdivisions when they are enforcing state law." (*See* Opp'n at 25 (citing *Evers v. Cty. of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984)).)

Again, neither side addresses the *Mitchell* factors, (*see generally* City Mem.; Opp'n; City Reply), and, like the County Defendants, the City Defendants rely on *Porter v. Gore*, as well as additional out-of-Circuit authorities from the Seventh and Eleventh Circuits. (*See* City Mem. at 3–4 (citing *Purcell ex rel. Est. of Morgan v. Toombs Cty.*, 400 F.3d 1313 (11th Cir. 2005); *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998); *Porter*, 354 F. Supp. 3d 1162).) Further, the Parties do not cite—and the Court has not found—any cases discussing California Health and Safety Code section 120175.5 or Eleventh Amendment immunity as to city defendants during the COVID pandemic. The Court therefore finds no reason to reach a different conclusion as to the City Defendants than regarding the County Defendants. Accordingly, the Court also concludes that neither the City Defendants nor the County Defendants are entitled to immunity under the Eleventh Amendment.

### 2. Mootness

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (internal quotation marks omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Defendants argue that Plaintiffs' claims for injunctive and declaratory relief regarding the challenged restrictions are moot because the challenged restrictions have been rescinded and, consequently, those claims should be dismissed.[12] (*See* Cty. Mot. at 18; City Mem. at 5–6; State Mem. at 5–9.)

---

[12] The original proclamation of emergency and guidance for the use of masks, colloquially called the "mask mandate," have not been rescinded, (*see, e.g.*, State Mem. at 6), and therefore, arguably, are not

There is, however, an "exception to the mootness doctrine for a controversy that is capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 584 U.S. ___, 138 S. Ct. 1532, 1540 (2018) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)).  "A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id.* (quoting *Turner v. Rogers*, 564 U.S. 431, 439–440 (2011)). Plaintiffs invoke this exception, arguing that "[t]he Governor has not terminated the March 4, 2020[] Emergency Proclamation," meaning "Plaintiffs and the people of California remain under the constant threat of Defendants reinstating the previously imposed Orders and regulations or essentially similar restrictions." (*See* Opp'n at 6.)

Defendants contend that Plaintiffs cannot satisfy either element of the "capable of repetition, yet evading review" exception to the mootness doctrine.  As for the first element, Defendants note that "the reason this action was not litigated earlier is because Plaintiffs chose to not file suit until March 2021, one year after the state of emergency went into effect." (*See* State Mem. at 8; *see also* State Reply at 4.)   Regarding the second requirement, Defendants argue that there can be "no reasonable expectation that the State will revert to the prior orders and guidance" because "risk to the State's healthcare system [has been] substantially reduced by widespread vaccination." (*See* State Mem. at 7–8, 9; *see also* State Reply at 4.)  Indeed, "[e]ven as case numbers have sharply increased due to the Delta and then Omicron variants, the State has not reinstated capacity or operational restrictions on businesses." (*See* State Reply at 4.)

/ / /

---

moot.  But as the State Defendants note, (*see id.* at 6 n.3), Plaintiffs' Complaint contains no allegations concerning injury in fact sustained as a result of the "mask mandate." (*See generally* Compl.)  As for the original proclamation of emergency, the Court already has concluded that the State Defendants are immune from suit under the Eleventh Amendment, *see supra* Section II.A.1.a, and would decline to address Plaintiffs' state law causes of action related to the original proclamation of emergency. *See infra* Section II.C and n.13.

21-CV-568 TWR (BLM)

Plaintiffs fail adequately to address either of these arguments. Plaintiffs provide no explanation for their failure to file suit earlier, (*see generally* Opp'n at 6–7), and earlier-filed cases were able to be fully litigated. *See, e.g.*, *Slidewaters*, 4 F.4th 747. Further, the cases on which Plaintiffs rely to argue that there is a reasonable expectation that Defendants will once again invoke the challenged restrictions are distinguishable. (*See* Opp'n at 7 (quoting *Tandon v. Newsom*, 593 U.S. ___, 141 S. Ct. 1294, 1297 (2021); *Bols*, 515 F. Supp. 3d at 1126) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S. Ct. 63, 68 (2020); *Roe v. Wade*, 410 U.S. 113, 125 (1973)).) In *Tandon*, for example, the district court concluded that a politician's claims were not moot where he attested that he intended to run for office the following year and that he had to meet with advisors, donors, and constituents over the following months while state and county restrictions remained in effect. *See* 517 F. Supp. 3d 922, 960 (N.D. Cal. 2021). Here, by contrast, the restrictions have been rescinded and, despite new "waves" of infection caused by new variants, the restrictions have not been reinstated. This is also dissimilar to *Bols*, in which the district court concluded that hair and nail salons' challenges were not moot because, during the pendency of the action, the plaintiffs had "once again received orders to close their businesses." *See* 515 F. Supp. 3d at 1125–26. In *Roman Catholic Diocese of Brooklyn*, the Court concluded that the applicants' challenges to restrictions on attendance at religious services in "red" and "orange" zones were not moot because "the applicants remain under a constant threat that the area in question will be reclassified as red or orange," *see* 141 S. Ct. at 68 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)), and, "if reclassification occurs late in a week . . . , there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes." *See id.* Here, however, Plaintiffs concede that the similar Blueprint system has already been rescinded. Finally, *Roe v. Wade* occurred in the context of pregnancy, where "the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete[,]" which is "a classic justification for a conclusion of nonmootness." *See* 410 U.S. at 125. Unlike pregnancy, which "will always be with us[,]"

*see id.*, this "extraordinary health emergency" will not. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring).

Because Plaintiffs fail to demonstrate that the "capable of repetition, yet evading review" exception applies, the Court concludes that Plaintiffs' claims for injunctive and declaratory relief are moot. Accordingly, the Court **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims for injunctive and declaratory relief. This includes Plaintiff's tenth cause of action for violation of Equal Protection clause of the California Constitution, Cal. Const. Art. I, § 7, and eleventh cause of action for violation of their right of liberty under the California Constitution, Cal. Const. Art. I, § 1, for which only equitable remedies are available. (*See* City Mot. at 4–5; *see also Roy v. Cty. of Los Angeles*, 114 F. Supp. 3d 1030, 1041–42 (C.D. Cal. 2015) (dismissing claims for money damages for violation of Article I, section 7(a) of the California Constitution (citing *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 317 (2002)); *Allen v. Cty. of Sonoma*, No. 17-CV-00448-YGR, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (dismissing claim for damages under Article I, section 1 of the California Constitution); *accord Est. of Strickland v. Nevada Cty.*, No. 2:21-CV-00175-MCE-AC, 2021 WL 4443106, at *9 (E.D. Cal. Sept. 28, 2021) (dismissing causes of action under Article I, sections 1 and 7 of the California Constitution).) Although the State Defendants are immune from suit, *see supra* Section II.A.1.a, dismissal of the State Defendants is also warranted on grounds of mootness because Plaintiffs seek only equitable relief from them. (*See* State Mot. at 7 ¶ 2; *see also* Compl. Prayer at 74–75.)

### B.  *Federal Claims*

Plaintiffs assert a panoply of claims alleging violations of various of their rights under the United States Constitution, including their substantive, (*see* Compl. ¶¶ 138–71), and procedural (*see id.* ¶¶ 172–78) due process rights under the Fourteenth Amendment; the right to equal protection under the Fourteenth Amendment, (*see* Compl. ¶¶ 179–88); the right to just compensation for their property under the Fifth Amendment, (*see* Compl. ¶¶ 189–96, 213–20); the right to engage in interstate commerce under the Commerce

Clause, (*see* Compl. ¶¶ 197–206, 249–58); and their First Amendment Rights to free speech, lawful assembly, and petition for redress. (*See* Compl. ¶¶ 207–212.) Defendants contend that all of these claims are subject to dismissal, (*see* Cty. Mem. at 12–24; City Mem. at 6–7; State Mot. at 2–3; State Mem. at 9–18), and Plaintiffs oppose. (*See generally* Opp'n at 9–21.) The Court briefly addresses each cause of action in turn.

### 1.    Substantive Due Process

Plaintiffs allege that the orders and restrictions challenged through this action are arbitrary and not narrowly tailored and have interfered with their "right[s] . . . to support themselves by engaging in a chosen lawful occupation or business" and "to travel." (*See* Compl. ¶¶ 140–41; *see also id.* ¶¶ 138–71.) "Laws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Metroflex Oceanside*, 532 F. Supp. 3d at 982 (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997))). Defendants urge for dismissal on the grounds that (1) Plaintiffs have failed to allege the violation of a fundamental right, and (2) the orders at issue survive rational basis review. (*See* State Mot. at 2; State Mem. at 9–11; *see also* Cty. Mem. at 17; City Mem. at 6.)

The Court agrees. To the extent Plaintiffs contend that they have a fundamental right to "engag[e] in a chosen lawful occupation or business," (*see* Compl. ¶ 140), the Ninth Circuit has conclusively established in other cases challenging similar COVID restrictions that "[t]he right to pursue a common calling is not considered a fundamental right." *Slidewaters*, 4 F.4th at 758 (citing *Marilley v. Bonham*, 844 F.3d 841, 854 (9th Cir. 2016) (en banc) (collecting cases)). As for the right to travel, "[a]lthough the Supreme Court has recognized a fundamental right to *inter*state travel," *Lauran v. U.S. Forest Serv.*, 141 F. App'x 515, 520 (9th Cir. 2005) (emphasis in original) (citing *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (Brennan, J., plurality op.)), "neither the Supreme Court nor the Ninth Circuit has recognized a protected right to *intra*state travel." *Id.* (emphasis in original) (citing *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th

17

Cir. 1997)).   Here, Plaintiffs fail to allege that they were prevented from engaging in interstate travel.  (*Cf.* Compl. ¶ 117 ("On January 6, 2021, CDPH issued a Travel Advisory stating, 'Except in connection with essential travel, Californians *should avoid* non-essential travel to any part of California more than 120 miles from one's place of residence, or to other states or countries,' and 'non-essential travelers from other states or countries are *strongly discouraged* from entering California.'"); *id.* ¶ 200 ("Plaintiff Knite's business depends substantially on those traveling between Yuma, Arizona, and San Diego, California, along Highway Interstate 8.").)   Plaintiffs therefore fail to allege that the challenged restrictions violated a fundamental right.

Because Plaintiffs fail to allege the violation of a fundamental right, rational-basis scrutiny applies.  *See, e.g.*, *Slidewaters*, 4 F.4th at 758 (quoting *Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.*, 793 F.2d 1090, 1093–94 (9th Cir. 1986)); *Metroflex Oceanside*, 532 F. Supp. 3d at 982.  Plaintiffs' arguments to the contrary, (*see* Opp'n at 9–11), are not availing:  this is not a "quarantine" case, *cf. Robinson v. California*, 370 U.S. 660, 666 (1962) (addressing "compulsory treatment, involving quarantine, confinement, or sequestration"), and Plaintiffs cite no authority supporting that the "unprecedented nature" and "unprecedented duration" of the challenged orders and restrictions transform the underlying economic rights into fundamental rights.  (*See generally* Opp'n at 10–11.)  Consequently, rational basis review applies and, to allege a viable substantive due process claim, Plaintiffs "must show that the state's actions are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'"  *Slidewaters*, 4 F.4th at 758 (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)).

Because "[t]here is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease[,] . . . [t]he question is whether Defendants' actions are rationally related to this interest."  *See id.*  Plaintiffs argue that the challenged restrictions are not rational because "the State Defendants failed to consider the serious and continuing, long-term, negative health outcomes resulting from the Orders themselves," which "will

18

cause greater negative health outcomes than COVID-19." (*See* Opp'n at 14.)  Plaintiffs also allege that Intensive Care Unit capacity—on which certain of the challenged restrictions were based—could be "arbitrarily manipulate[d]." (*See id.* at 15.)  But in *Slidewaters*, as here, the "[d]efendants created a state-wide plan . . . . [that] attempt[ed] to differentiate activities based on how essential they are."  *See Slidewaters*, 4 F.4th at 758.  "The plan also group[ed] different types of activities and treat[ed] them by category rather than requiring the state to conduct an assessment of each and every individual business."  *Id.*  The Ninth Circuit concluded, "[p]articularly in dealing with an emergency that calls for prompt action, it [wa]s not irrational for Defendants to take this approach."  *See id.*

Ultimately, it does not matter whether the Defendants' actions "actually advance[d] their] stated purposes, *see Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir.), *as amended* (Oct. 18, 2004) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994)), or whether Plaintiffs "agree with the regulation[s] or [their] application."  *See Slidewaters*, 4 F.4th at 759.  Plaintiffs fail to allege that the challenged restrictions violated a fundamental right or were not rationally related to the legitimate state interest in preventing the spread of COVID-19.  Accordingly, the Court **GRANTS** the Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' first cause of action for violation of their substantive due process rights.

### 2. *Procedural Due Process*

Plaintiffs also claim that Defendants violated their procedural due process rights under the Fourteenth Amendment by "depriv[ing P]laintiffs of their protected liberty and property interests without providing notice and an opportunity to be heard." (*See* Compl. ¶ 174; *see also id.* ¶¶ 172–78.)  "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Metroflex Oceanside*, 532 F. Supp. 3d at 983 (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).  Defendants urge the Court to dismiss Plaintiffs' procedural due process claims on the grounds that individualized notice and a hearing were not required before they issued the

challenged restrictions, which applied to the entire state.  (*See* State Mot. at 3; State Mem. at 11–12; *see also* Cty. Mot. at 9; City Mot. at 6–7.)

"[C]ourts have held that in the current COVID-19 crisis, temporary closures of a business do not implicate procedur[al] due process rights." *Metroflex Oceanside*, 532 F. Supp. 3d at 983 (quoting *Xponential Fitness v. Arizona*, No. CV-20-01310-PHX-DJH, 2020 WL 3971908, at *5 (D. Ariz. July 14, 2020)) (collecting cases).  This is because "[t]he COVID-related restrictions challenged by Plaintiffs are legislative in nature."  *See id.* Plaintiffs respond that "[t]he Orders and restrictions at issue here were not legislative for purposes of procedural due process" because they "were imposed entirely through the executive branch."  (*See* Opp'n at 17.)  As Defendants argue, however, "this reflects a fundamental misunderstanding of what 'legislative in nature' means." (*See* State Reply at 8.)  For purposes of due process, an act is "legislative" when it "affect[s] all citizens of California and at [its] most particular direct[s] restrictions towards nationwide groups and classes of individuals and businesses."  *See Metroflex Oceanside*, 532 F. Supp. 3d at 983 (internal quotation marks omitted) (quoting *Culinary Studios*, 517 F. Supp. 3d at 1067).

Plaintiffs also argue that the "Blueprint is not generally applicable to the entire state" because "it applies to specific businesses and moves businesses within a specified county back and forth between the tiers based on the Public Health Officer's evaluation of the criteria laid out under the Blueprint." (*See* Opp'n at 18.)  But the Blueprint applies uniform criteria to all business within California.  (*See, e.g.*, Compl. ¶ 92 (describing the challenged restrictions as applying to all restaurants in California).)  Numerous courts have concluded that California's COVID-related restrictions are legislative in nature, *see, e.g.*, *Metroflex Oceanside*, 532 F. Supp. 3d at 983; *Culinary Studios*, 517 F. Supp. 3d at 1067–68 (collecting cases), and Plaintiffs have provided no basis for the Court to find otherwise. Accordingly, the Court **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' second cause of action for violation of their procedural due process rights.

/ / /

### 3. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Culinary Studios*, 517 F. Supp. 3d at 1072 (quoting *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003)). "Generally, legislation is presumed to pass constitutional muster and will be sustained if the classification drawn by the statute or ordinance is rationally related to a legitimate state interest. If the classification disadvantages a 'suspect class' or impinges a 'fundamental right,' the ordinance is subject to strict scrutiny." *Id.* (quoting *Nunez*, 114 F.3d at 944 (9th Cir. 1997)). "A suspect class is often defined as a group 'saddled with such disabilities, or subjected to such history of purposeful unequal treatment, or relegated to such a position of powerlessness as to command extraordinary protection from the majoritarian political process.'" *Id.* (quoting *Owens v. Ventura Cty. Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973))).

Plaintiffs allege that "[t]he San Diego County Defendants have violated plaintiffs' right to equal protection by intentionally enforcing health regulations, and the Orders and restrictions at issue, differently against similarly situated restaurants." (*See* Compl. ¶ 184; *see also generally id.* ¶¶ 179–88.) Defendants contend that dismissal is required because Plaintiffs do not allege that Defendants have violated a fundamental right or that Plaintiffs are members of a suspect class and because the challenged restrictions pass rational basis review. (*See* Cty. Mem. at 17–19; State Mot. at 3; State Mem. at 12–15; *see also* City Mem. at 6–7.) As with their substantive due process claims, *see supra* Section II.B.1, Plaintiffs urge the Court to apply intermediate scrutiny, (*see* Opp'n at 16), and argue that the Defendants' classification of business was arbitrary and irrational. (*See id.* at 16–17.)

For the reasons discussed above, *see supra* Section II.B.1, Plaintiffs have not alleged that Defendants violated a fundamental right. *See also Culinary Studios*, 517 F. Supp. 3d at 1072. Defendants are also correct that Plaintiffs have failed to allege that they are

members of a suspect class.  *See id.* ("[Restaurants] in [San Diego] are not a suspect class as they have not been subject to such disadvantages that suggest they require special protection from the political process.  Similarly, businesses termed non-essential are not a suspect class.").  Consequently, Plaintiffs' claims are subject to rational basis review, *see id.*, and "every court considering Equal Protection challenges brought by business owners to COVID-related restrictions has upheld the restrictions."  *See Metroflex Oceanside*, 532 F. Supp. 3d at 981 (quoting *Tandon v. Newsom*, 517 F. Supp. 3d 922, 953 (N.D. Cal. Feb. 5, 2021)); *see also, e.g.*, *Culinary Studios*, 517 F. Supp. 3d at 1072 (quoting *Prof'l Beauty Fed'n of Cal. v. Newsom*, 2:20cv4275, 2020 WL 3056126, at *7 (C.D. Cal. June 8, 2020)); *Six v. Newsom*, 462 F. Supp. 3d 1060, 1072 (C.D. Cal. 2020).  Plaintiffs present no argument that persuades the Court to reach a different conclusion.  Accordingly, the Court **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' third cause of action under the Equal Protection Clause.

### 4.   *Uncompensated Takings of Property*

"The Takings Clause of the Fifth Amendment states that private property [shall not] be taken for public use, without just compensation."  *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Knick v. Twp. of Scott*, 588 U.S. ___, 139 S. Ct. 2162, 2167 (2019)), *cert. denied*, 141 S. Ct. 731 (2021).  "A classic taking occurs when the 'government directly appropriates private property or ousts the owner from his domain.'"  *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)).  "Beyond a classic taking, the Supreme Court has recognized that 'if regulation goes too far it will be recognized as a taking.'"  *Id.* (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Here, Plaintiffs claim that "Defendants' imposition and enforcement of Orders restricting the operation of plaintiffs' businesses for an indefinite period, and having no stated end date, has caused both a regulatory and physical taking of plaintiffs' property without just compensation."  (*See* Compl. ¶¶ 192, 216; *see also id.* ¶¶ 189–96, 213–20.) "There are three types of regulatory action the Court has recognized, each of which aims

to identify regulatory actions that are functionally equivalent to the classic taking." *Bridge Aina Le'a*, 950 F.3d at 625 (internal quotation marks omitted) (quoting *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530–31 (9th Cir. 2019) (quoting *Lingle*, 544 U.S. at 539), *reversed on other grounds*, 594 U.S. ___, 141 S. Ct. 2063 (2021))). "Two types of regulatory actions—*Loretto* and *Lucas* takings—are *per se* takings." *Id.* (citing *Cedar Point*, 923 F.3d at 531). The Supreme Court has indicated that both are "relatively narrow" in scope. *See id.* at 625 n.6 (*Loretto*), 626 (*Lucas*). "A *Loretto* taking occurs 'where government requires an owner to suffer a permanent physical invasion of her property.'" *Id.* at 625 n.6 (quoting *Lingle*, 544 U.S. at 538). "The *Lucas* rule applies to regulations that completely deprive an owner of *all* economically beneficial us[e] of her property[,]" *Id.* at 626 (internal quotation marks omitted) (first alteration and emphasis in original) (quoting *Lingle*, 544 U.S. at 538), and is "confined to the 'extraordinary circumstance when *no* productive or economically beneficial use of land is permitted[.]'" *See id.* (emphasis in original) (quoting *Lucas*, 505 U.S. at 1017). "*Penn Central* takings are the third type of regulatory taking." *Id.* at 625 (citing *Cedar Point*, 923 F.3d at 531). In *Penn Central* cases, courts apply "three . . . factors: (1) '[t]he economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'" *See id.* (quoting *Penn Central*, 438 U.S. at 124). Although not entirely clear from Plaintiffs' Complaint, (*see generally* Compl. ¶¶ 189–96, 213–20), Plaintiffs appear to plead a physical taking, a regulatory taking under *Penn Central*, and a *per se* regulatory taking under *Lucas*. (*See* Compl. ¶¶ 192, 216; *see also* Opp'n at 19.)

a.      Physical Taking

Plaintiffs allege that "Defendants' imposition and enforcement of Orders restricting the operation of plaintiffs' businesses for an indefinite period, and having no stated end date, . . . caused . . . a . . . physical taking of plaintiffs' property without just compensation. (*See* Compl. ¶¶ 192, 216.) Defendants respond that Plaintiffs have failed to allege a

/ / /

23

physical taking.  (*See* Cty. Mem. at 20–22; State Mot. at 3; State Mem. at 15–16; *see also* City Mem. at 6–7.)  The Court agrees.

"A physical taking occurs 'when the government physically takes possession of an interest in property for some public purpose.'"  *Culinary Studios*, 517 F. Supp. 3d at 1064 (quoting *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006)) (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321–22 (2002); *Rancho De Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088 (9th Cir. 2015)). Here, Plaintiffs' Complaint "alleges no actual physical occupation by any governmental entities of any of Plaintiffs' respective businesses."  (*See id.*; *see also generally* Compl.) Because "[t]here is no plausible 'physical taking' alleged[,] . . . dismissal of such a claim is appropriate."  *See Culinary Studios*, 517 F. Supp. 3d at 1064.  The Court therefore **GRANTS** Defendants' Motions and **DISMISSES WITH PREJUDICE** Plaintiffs' fourth and seventh causes of action to the extent they are predicated on a physical taking of Plaintiffs' properties.

        b.     Regulatory Takings

Defendants also argue for dismissal of Plaintiffs' regulatory takings claims on multiple grounds.  (*See generally* Cty. Mem. at 20–22; State Mot. at 3; State Mem. at 15–16; State Reply at 8–9; *see also* City Mem. at 6–7.)  First, the State Defendants argue that injunctive and declaratory relief are not remedies available for takings claims.  (*See* State Mot. at 3 (citing *Knick*, 139 S. Ct. at 2179); State Mem. at 15.)  Although Plaintiffs' claims for equitable relief have already been dismissed as moot, *see supra* Section II.A.2, the State Defendants are correct that "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable."  *See Knick*, 139 S. Ct. at 2176.  Here, Plaintiffs may seek just compensation from the State Defendants in state court and from the City and County Defendants in federal or state court.  *See Culinary Studios*, 517 F. Supp. 3d at 1065. The Court therefore **DISMISSES WITH PREJUDICE** as to the State Defendants and **DISMISSES WITHOUT PREJUDICE** as to the County and City Defendants Plaintiffs'

fourth and seventh causes of action to the extent they seek equitable relief.  *See Culinary Studios*, 517 F. Supp. 3d at 1065.

This leaves Plaintiffs' regulatory takings claims for just compensation as to the County and City Defendants.  As in *Culinary Studios*, the challenged restrictions "do not deprive the [Restaurant] Plaintiffs of *all* beneficial use of the property" because "they may still provide take out[, delivery, and—at times—outdoor] dining from their restaurants," meaning "this case is not governed by . . . *Lucas*."  (*See* 517 F. Supp. 3d at 1065 & n.8 (emphasis in original); *see also* Compl. ¶¶ 60–126.)  "Therefore, this case is governed by *Penn Central*."  *See Culinary Studios*, 517 F. Supp. 3d at 1065 (citing *Hotop v. City of San Jose*, 982 F.3d 710, 714 (9th Cir. 2020)).  Unfortunately for Plaintiffs, "[d]istrict courts have consistently rejected business owners' claims that COVID-related restrictions constitute either a per se taking or a partial taking under *Penn Central*."  *See Metroflex Oceanside*, 532 F. Supp. 3d at 982 (collecting cases).  The Court finds particularly persuasive the reasoning of *Excel Fitness Fair Oaks, LLC v. Newsom*, No. 2:20-CV-02153-JAM-CKD, 2021 WL 795670 (E.D. Cal. Mar. 2, 2021), in which the defendants raised the same arguments concerning *Lingele*, 544 U.S. 528, and *Tahoe-Sierra*, 535 U.S. 302, as do Defendants here.  *See Excel Fitness Fair Oaks*, 2021 WL 795670, at *4–5.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' regulatory takings claims against the City and County Defendants.

### 5.   Commerce Clause

In their fifth cause of action, Plaintiffs allege that "[t]he Orders and restrictions imposed and enforced by defendants excessively burden interstate commerce by precluding plaintiffs, and the people of the State of California, and travelers from other state and countries, from engaging in substantial and wide-ranging economic, business and employment activities, as well as simply traveling to and from the State of California."  (*See* Compl. ¶ 202; *see also id.* ¶¶ 197–206.)  "The Supreme Court has adopted a two-tiered approach to analyzing state economic regulation under the Commerce Clause."  *Ore. Rest. & Lodging Ass'n v. Brown*, --- F. Supp. 3d ---, 2020 WL 6905319, at *4 (D. Or. 2020)

(quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013)).  "At the first tier, [i]f a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013)). "At the second tier, '[i]n contrast, if the regulations apply evenhandedly to in-state and out-of-state interests, the party challenging the regulations must establish that the incidental burdens on interstate and foreign commerce are clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994)) (citing *Pike v. Bruce Church*, 397 U.S. 137 (1970)).

Plaintiffs do not appear to invoke the "first tier" discriminatory approach.  (*See generally* Compl.; *see also* Opp'n at 20 (discussing "second tier" approach).)  With regard to this theory, Defendants argue that Plaintiffs have failed to allege that the burdens on interstate commerce are clearly excessive in relation to the local benefits.  (*See* Cty. Mem. at 23–24; State Mot. at 3 (citing *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015)); State Mem. at 16–18; *see also* City Mem. at 7.)  Plaintiffs respond that their "Complaint alleges that plaintiffs engage in substantial interstate commerce in the operation of their lodging and dining businesses, including serving many out of state patrons[ and, m]oreover, . . . that the Orders and restrictions at issue have impacted billions of Dollars of interstate commerce in the State of California.  (*See* Opp'n at 20 (citing Compl. ¶¶ 200–02).)  Numerous courts, however, have concluded that allegations similar to Plaintiffs' fail to stat a plausible dormant Commerce Clause claim.  *See, e.g.*, *Abshire v. Newsom*, No. 221CV00198JAMKJN, 2021 WL 3418678, at *8 (E.D. Cal. Aug. 5, 2021); *Ore. Rest. & Lodging Ass'n*, 2020 WL 6905319, at *5.  The Court therefore **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' fifth cause of action.

/ / /

### 6. First Amendment Retaliation

Plaintiff's sixth cause of action asserts that "[t]he County Defendants have retaliated against plaintiffs for the exercise of their rights to free speech, lawful assembly and to petition the government for a redress of grievances by serving a number of plaintiffs with Cease and Desist Orders within hours or days of said plaintiffs publicly declaring their intent to refuse to accede to the unconstitutional Covid restrictions imposed upon them." (*See* Compl. ¶ 209; *see also id.* ¶¶ 207–12.)  The County and City Defendants contend that this cause of action is subject to dismissal because Plaintiffs' speech was not protected, (*see* Cty. Reply at 4), and because cease and desist orders "carr[y] no actual punitive element[,]" (*see* Cty. Mot. at 11; *see also* City Mot. at 7), and "only prohibited [the plaintiff] from engaging in *unlawful* uses of its property." (*See* Cty. Mot. at 12 (alteration and emphasis in original) (quoting *Goodspeed Airport, LLC v. E. Haddam Land Tr., Inc.*, No. 3:01cv403 (SRU), 2005 U.S. Dist. LEXIS 11558 at *6-7 (D. Conn. June 13, 2005)); *see also* City Mot. at 7.)

Plaintiffs' only response is that "the selective enforcement of the Orders and restrictions is sufficient to chill a person of ordinary firmness from future First Amendment activities." (*See* Opp'n at 21 (citing *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).)  A First Amendment retaliation claim, however, requires the plaintiff to allege three elements: "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  *See O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).  Having failed to address the County and City Defendants' arguments, Plaintiffs have conceded that their Complaint fails sufficiently to plead these requirements. *See Moore*, 73 F. Supp. 3d at 1205.

Even on the merits, however, Plaintiffs have failed to plead a viable First Amendment retaliation claim against the County and City Defendants.  For example,

Defendants are correct that cease-and-desist letters alone, without citations or fines, fail to qualify as an adverse action.  *See, e.g.*, *Wardany v. City of San Jacinto*, 509 F. App'x 650, 652 (9th Cir. 2013) (affirming dismissal of First Amendment retaliation claim based on issuance of notices of violation for violations of regulations concerning placement of advertisements in business windows where the plaintiff was "never issued citations or fines").  Plaintiffs also fail to allege causation, *i.e.*, that Defendants' issuance of the cease-and-desist letters "was substantially motivated by [Plaintiffs'] expressed opposition to the [challenged restrictions] alone, rather than [their] intention to violate the[m]."  *See Samaan v. Cty. of Sacramento*, No. 216CV00789KJMCKD, 2018 WL 4908171, at *10 (E.D. Cal. Oct. 10, 2018) (citing *Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-CV-01584-APG-GWF, 2017 WL 3610609, at *6 (D. Nev. Aug. 21), *appeal dismissed*, No. 17-16728, 2017 WL 5899849 (9th Cir. Sept. 19, 2017)).  Because Plaintiffs fail sufficiently to plead a First Amendment retaliation claim against the County and City Defendants, the Court **GRANTS** their Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' sixth cause of action.

### C.     State Claims

#### 1.     Supplemental Jurisdiction

To the extent Plaintiffs' state law claims have survived Defendants' jurisdictional challenges, *see supra* Section II.A, "because the Court is dismissing the only federal claims at the outset of the litigation, it is more appropriate to decline supplemental jurisdiction over the state law claims."  *See Metroflex Oceanside*, 532 F. Supp. 3d at 984 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)).  Accordingly, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law claims.

#### 2.     Sufficiency of Allegations

Even if the Court were to retain jurisdiction over Plaintiffs' surviving state law claims, however, each would still be subject to dismissal.  Plaintiffs' eighth cause of action for uncompensated takings under the California Constitution and tenth cause of action for

violation of the Equal Protection Clause of the California Constitution merit dismissal for the same reason as Plaintiffs' corresponding federal claims. *See supra* Sections II.B.3–4. Further, as discussed above, *see supra* Section II.A.2, the Court already has dismissed as moot Plaintiffs' tenth and eleventh causes of action for violation of Equal Protection clause of the California Constitution and right of liberty under the California Constitution. Finally, the Court already has dismissed on jurisdictional grounds Plaintiffs' thirteenth through fifteenth causes of action against the State Defendants.[13]   *See supra* Section II.A.

---

[13] Even if the thirteenth through fifteenth causes of action were not subject to dismissal on various jurisdictional grounds, the Court would still dismiss those claims on the merits. The thirteenth cause of action seeks termination of the Governor's declaration of a state of emergency pursuant to California Government Code § 8629, which provides that "the 'Governor shall proclaim the termination of a state of emergency at the earliest possible date that conditions warrant.'" (*See* Compl. ¶ 264 (quoting Cal. Gov't Code § 8629); *see also id.* ¶¶ 259–68.) The State Defendants respond that "[t]here is no private right of action to challenge the continuation of a state of emergency" and "the Legislature preserved for itself the authority to terminate an emergency declared by the Governor under the E[mergency Services Act]." (*See* State Mem. at 22 (citing Cal. Gov't Code § 8629).) The Court agrees and, in any event, the Court would exercise its discretion to abstain from and dismiss Plaintiff's thirteenth cause of action, which addresses a matter of first impression solely concerned with California law and the actions of its Governor and Legislature. *See generally Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–28 (1996).

As for Plaintiff's fourteenth cause of action, Plaintiffs contend that the Governor's original proclamation of a state of emergency "did not meet the statutory threshold on conditions supporting a Proclamation of a State of emergency" pursuant to California Government Code § 8558(b). (*See* Compl. ¶¶ 269–80.) Specifically, "Plaintiffs contend that Defendant Newsom's findings that conditions where the number of persons requiring medical care **may** exceed locally available resources, and **potentially** including resources beyond those currently available, fail to reach the threshold of **likely** to be beyond the control of the relevant single jurisdiction, as mandated by G[overnment Code] § 8558(b)." (*See* Opp'n at 23 (emphasis in original).) But as the State Defendants note, (*see* State Mem. at 24 (quoting *Cal. Corr. Peace Officers Ass'n v. Schwarzenegger* ("*Cal. CPOA*"), 163 Cal. App. 4th 802, 817 (2008))), Section 8558(b) "already has been construed to permit a declaration of emergency where the emergency conditions, among other things, 'is likely to require the combined forces of a mutual aid region or regions to combat.'" Further,

> [T]here is no language in the [ESA] that requires the Governor to state each aspect of the necessary finding in the proclamation itself. Issuance of the proclamation implies the Governor has made the finding. (Evid. Code, § 664.) Therefore, it is sufficient if the proclamation sets forth circumstances that support the implied finding.

(*See id.* at 25 (alterations in original) (quoting *Cal. CPOA*, 163 Cal. App. 4th at 820).) The Court therefore would conclude that Plaintiffs fail sufficiently to allege that the original proclamation failed to comply with Section 8558(b).

This leaves only Plaintiffs' ninth cause of action for violation of California Government Code § 8572 against the County and City Defendants because, as addressed above, *see supra* Section II.A.1.a, the State Defendants are entitled to sovereign immunity.

Under Section 8572, "[i]n the exercise of the emergency powers hereby vested in him during a state of war emergency or state of emergency, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and the state shall pay the reasonable value thereof." (*See* Compl. ¶ 229 (quoting Cal. Gov't Code § 8572).)  Plaintiffs allege that "Defendants have utilized Plaintiffs private property and personnel for carrying their objectives of controlling COVID-19 cases[; h]owever, Defendants have failed to pay any value for Plaintiffs private property and personnel for carrying out their objectives." (*See id.* ¶ 230.)  Defendants respond that none of the challenged restrictions was issued pursuant to Section 8572 and, in any event, Plaintiffs' businesses were neither "commandeer[ed]" nor "utilize[d]." (*See* State Mot. at 4; State Mem. at 19–20; *see also* City Mem. at 7; Cty. Reply at 6.)  The County Defendants further argue that, because Section 8572 is limited to the Governor, they cannot have "commandeer[ed] or utilize[d]" property pursuant to that law, (*see* Cty. Mem. at 24), or owe compensation under it.  (*See* Cty. Reply at 6.)

Plaintiffs fail adequately to address these arguments, (*see* Opp'n at 21; *see also* State Reply at 10), which may "constitute[] abandonment of the claim." *See Moore*, 73 F. Supp.

---

Finally, Plaintiffs allege in their fifteenth cause of action that "Executive Orders N-33-20 and N-60-20 exceed the Governor's authority and renders both orders unconstitutional and invalid" under the non-delegation doctrine found in Article III, section 3 of the California Constitution. (*See* Compl. ¶¶ 281–89.)  At the time Plaintiffs filed their Complaint, that issue was "before the Court of Appeal of the State of California, Third Appellate District, by Case No. C093006." (*See* Compl. ¶ 285.)  That case has now been definitively decided, with the Court of Appeal concluding that "the Emergency Services Act, and specifically section 8627 of the Emergency Services Act, is not an unconstitutional delegation of legislative power." *See Newsom v. Super. Ct.*, 63 Cal. App. 5th 1099, 1118 (2021), *review denied* (Aug. 11, 2021).  The Court therefore would conclude that *Newsom v. Superior Court* controls and is dispositive of Plaintiffs' non-delegation claim.

3d at 1205.  In any event, it is clear from the plain language of Section 8572 that it applies only to the "Governor" and that it applies only where property has been "commandeer[ed]."  *See* Cal. Gov't Code § 8572.  Plaintiffs have not alleged that the Governor took physical possession of their property pursuant to the restrictions at issue. *See, e.g.*, Amnon Lehavi, *Temporary Eminent Domain*, 69 Buff. L. Rev. 683, 686 (2021) (discussing Executive Order in which the Governor enabled the State of California to "exercise its power to 'commandeer property . . . suitable for use as places of temporary residence or medical facilities as necessary for quarantining, isolating, or treating individuals who test positive for COVID-19 or who have had a high-risk exposure and are thought to be in the incubation period'" (quoting Exec. Order No. N-25-20 (Mar. 12, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.12.20-EO-N-25-20-COVID-19 .pdf)); *see also supra* Section II.B.4 (dismissing Plaintiffs' causes of action for uncompensated "takings" of their properties).  Plaintiffs therefore fail to state a claim under Section 8572, and the Court **GRANTS** Defendants' Motions **DISMISSES WITHOUT PREJUDICE** Plaintiffs' ninth cause of action.

### THE CITY DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT

In the event that any of Plaintiffs' claims survive dismissal, the City Defendants alternatively request that the Court order Plaintiffs to provide a more definite statement under Federal Rule of Civil Procedure 12(e).  (*See* City Mot. at 4; City Mem. at 8–9.) Because the Court is granting Defendants' Motions to Dismiss and dismissing Plaintiffs' Complaint, the Court **DENIES AS MOOT** the City Defendants' Motion for a More Definite Statement.

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 18–20) and **DISMISSES** Plaintiffs' Complaint (ECF No. 1) as specified above. Because the Court has dismissed Plaintiffs' Complaint, the Court **DENIES AS MOOT** the City Defendants' alternative Motion for a More Definite Statement, as well as the Joint Request by County, State, and City Defendants for Leave to Submit Supplemental

Authority (ECF No. 34), which was filed earlier today.  Plaintiffs **MAY FILE** an amended complaint curing the deficiencies identified in this Order <u>within twenty-one (21) days of the electronic docketing of this Order</u>.  *Should Plaintiffs fail timely to file an amended complaint, the Clerk of Court will enter judgment of dismissal without prejudice without further Order of the Court.*

      **IT IS SO ORDERED**.

Dated:  March 10, 2022

Honorable Todd W. Robinson
United States District Court

21-CV-568 TWR (BLM)